# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 3, 2006        Decided December 15, 2006

No. 05-5361

JOHN A. PRICE,
APPELLANT

v.

BEN S. BERNANKE, CHAIRMAN,
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00973)

———

*Nicholas W. Woodfield* argued the cause for appellant. With him on the briefs was *R. Scott Oswald*.

*John L. Kuray*, Senior Counsel, Board of Governors of Federal Reserve System, argued the cause for appellee. With him on the brief were *Richard M. Ashton*, Deputy General Counsel, and *Katherine H. Wheatley*, Associate General Counsel.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Appellant John A. Price is currently a mainframe systems manager for the Federal Reserve Board, where he has been employed since 1980. In 2004 Price filed suit in district court claiming discrimination on grounds of race, sex and age in violation of Title VII of the 1964 Civil Rights Act and the Age Discrimination in Employment Act ("ADEA") (specifically 29 U.S.C. § 633a, the portion of the ADEA applicable to the federal government); he also alleged retaliation against him for his complaints under both statutes. The district court granted the Board's Motion to Dismiss or for Summary Judgment, *Price v. Greenspan*, 374 F. Supp. 2d 177 (2005), finding Price's discrimination claims substantively insufficient and his retaliation claims time-barred. In an unpublished order we affirmed as to all issues other than retaliation under the ADEA. Like the district court, we here find the ADEA retaliation claim time-barred.

\* \* \*

In 2001 and 2002 Price filed a series of administrative complaints with the Board alleging discrimination and retaliation. The Board rejected the retaliation complaint first, and Price appealed its determination to the Equal Employment Opportunity Commission ("EEOC"). The latter issued a final decision upholding the Board's decision on August 6, 2003. The EEOC's decision notified Price that he had 90 days in which to file a civil action.

On June 14, 2004, more than ten months after the EEOC's retaliation decision, Price filed a civil action pursuing the Title VII and ADEA discrimination and retaliation claims made in his administrative complaints. Under the ADEA, federal employees may file a civil action if they are dissatisfied with the outcome of an administrative process; alternatively, they are free to bring suit in federal court in the first instance. See 29 U.S.C. § 633a(b), (c) & (d).

The district court found the two retaliation claims time-barred because Price had filed suit more than 90 days after the EEOC's final decision; the court treated both claims as governed by the statutory 90-day filing deadline in Title VII, 42 U.S.C. § 2000e-16(c). *Price*, 374 F. Supp. 2d at 184-86. It noted that, while the ADEA provision protecting federal employees doesn't itself mention a limitations period, "[m]ost circuits hold that when a federal employee pursues an age discrimination claim through the administrative process, that employee faces the 90 day statute of limitations set forth in Title VII, because Title VII offers the most analogous statutory regime and limitations period." *Id.* at 186.

* * *

The question before us is straightforward: What is the appropriate statute of limitations for federal employees advancing claims of discrimination under the ADEA in a civil action if the EEOC has already addressed those claims? The ADEA lacks an express statutory provision on the issue. The Board believes that 90 days is the appropriate time period, both because of the ADEA's similarity to Title VII and because such a limit represents the considered opinion of the EEOC, the agency charged by Congress with administering the ADEA. See 29 C.F.R. § 1614.407(c). Price advances at least three alternatives: first, that his suit is governed by the

four-year statute of limitations in 28 U.S.C. § 1658; second, that he has six years under 28 U.S.C. § 2401; and third, that we should borrow the two-year limitations period of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 255.

Price's first proposal, 28 U.S.C. § 1658, states that "a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." In *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004), the Supreme Court held that § 1658 applies only "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Id*. at 382. There is no question that Price's claim against the Board depends exclusively on provisions adopted before 1990: 29 U.S.C. § 633a(c) has been unchanged since its enactment in 1974, and the Board was covered from the outset.

Price responds by noting that the ADEA *has* been amended post-1990. Twice, in fact: once to create a cause of action for employees of the Government Printing Office ("GPO") and Government Accountability Office ("GAO"), 1995 Pub. L. 104-1, Title II, Sec. 201(c)(2), 109 Stat. 8, and again to create a cause of action for employees of the Smithsonian, 1998 Pub L. 105-220, Title III, Sec. 341(b), 112 Stat. 1092. But Price is not an employee of any of the three, so *his* cause of action against the Board was certainly not "made possible" by those post-1990 amendments.

Price points, however, to *Jones*'s endorsement of the benefits of uniformity of limitations. See 541 U.S. at 380-81 n.14 ("a uniform nationwide limitations period for a federal cause of action is *always* more appropriate" than a rule that applies to some but not to others) (internal citation omitted). Accordingly, he argues, we should extend to him—and presumably every other federal employee bringing an action

under the ADEA—the same time period presumably enjoyed by employees of the GPO, GAO, and Smithsonian. To hold otherwise would, he says, "Balkanize[]" the statutes of limitations applicable to federal employees.

In fact the Court's concern in *Jones* involved the much greater heterogeneity spawned when want of a federal limitations period forces courts to hare off in search of a state law analogue. See *id*. More important, *Jones* made clear that § 1658 must be read so as to properly reflect the trade-offs between two important values—uniformity *and* preservation of settled expectations. Concern for settled expectations had persuaded the reversed court of appeals to give § 1658 a very narrow reading, applying it only "when an act of Congress creates a wholly new cause of action, one that does not depend on the continued existence of a statutory cause of action previously enacted and kept in force by the amendment." *Id*. at 374 (internal quotations omitted). The Supreme Court acknowledged expectations' importance, and said that they

> . . . provide a valid reason to reject an interpretation of § 1658 under which any new amendment to federal law would suffice to trigger the 4-year statute of limitations, regardless of whether the plaintiff's claim would have been available—and subject to a state statute of limitations—prior to December 1, 1990.

*Id*. at 381-82. In other words, the Court considered exactly the proposal that Price makes here, and found that it gave inadequate weight to legitimate expectations. We of course follow suit.

Having rejected the application of § 1658's general four-year time period, we must borrow an appropriate statute of limitations from an analogous statute. See *DelCostello v. Int'l*

*Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). In his brief, Price suggested that we apply 28 U.S.C. § 2401(a)'s six year catch-all statute of limitations for non-tort civil claims against the United States, as the Ninth Circuit did in *Lubniewski v. Lehman*, 891 F.2d 216, 221 (9th Cir. 1989). But *Lubniewski* is not only an outlying decision but also an otherwise weak reed, because its reasoning is based almost entirely on dictum in a Second Circuit opinion, *Bornholdt v. Brady*, 869 F.2d 57 (2d Cir. 1989), a dictum now disavowed by that court. See *Long v. Frank*, 22 F.3d 54, 56 (2d Cir. 1994). Both *Lubniewski* and *Bornholdt* relied on the legislative history of the ADEA and drew their conclusion almost entirely from a shift between a draft of § 633a submitted to committee and the final version. The draft had spelled out a limitations period identical to that which then prevailed for similar claims under Title VII; the final version was almost unchanged but for deletion of that provision. But "[n]ot every silence is pregnant." *State of Illinois Dept. of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983). We don't believe much can reasonably be inferred from this deletion—unexplained in the legislative history yet explicable on a wide range of grounds.

*Lubniewski* aside, applying § 2401(a)'s six-year limit raises independent concerns. Though § 2401(a) sets an outside time limit on suits against the United States, there is nothing to suggest that Congress intended it to govern any time a court finds a cause of action without a specific limitations period. Moreover, doing so here would lead to the anomalous result that a 90-day statute of limitations would apply for claims brought against a private employer under the ADEA, see 29 U.S.C. § 626(e), but a period of six years would apply for claims against the federal government. Given that statutes of limitations against the government involve a waiver of sovereign immunity, it seems unlikely Congress

intended such an anomaly. Accord *Jones v. Runyon*, 32 F.3d 1454, 1455 (10th Cir. 1994). Perhaps not surprisingly, at oral argument counsel conceded that he didn't think the *Lubniewski* court was correct in its application of a six-year limit. Recording of Oral Argument at 13:45 ("Frankly, I don't think the *Lubniewski* court in the Ninth Circuit is correct on the six-year statute."). We agree.

In his initial brief, Price pointed us to the FLSA's two-year statute of limitations. In particular, he noted that when the ADEA was enacted in 1967, its prohibition on discrimination in private employment on the basis of age incorporated the enforcement scheme of the FLSA. Moreover the Supreme Court once held that "violations of the ADEA generally are to be treated as violations of the FLSA." *Lorillard v. Pons*, 434 U.S. 575, 578 (1978). Unfortunately for Price, the analogy made in *Lorillard* "has no application in th[e] context" of federal-sector ADEA cases "because Congress did not incorporate the FLSA enforcement scheme" into § 633a, the ADEA section applicable to the federal government. *Lehman v. Nakshian*, 453 U.S. 156, 163 (1981). The analogy also now happens to be outdated, as in 1991 Congress removed the FLSA's incorporated statute of limitations from the private-sector portions of the ADEA and inserted a limitations scheme akin to that governing Title VII actions—i.e., 90 days. See Civil Rights Act of 1991, Pub. L. No. 102-166, § 115, 105 Stat. 1071, 1079 (codified as amended at 29 U.S.C. § 626(e)). Again, not surprisingly, Price retreated from reliance on the FLSA's two-year limit in both his reply brief and at oral argument. We agree as to its implausibility.

Having rejected Price's suggestions, we must consider the Board's claim that Title VII provides the most appropriate source for borrowing a statute of limitations. This is the position taken in published opinions by at least four other

circuits, see *Burzynski v. Cohen*, 264 F.3d 611, 619 (6th Cir. 2001); *Jones*, 32 F.3d at 1458; *Long*, 22 F.3d at 58; *Lavery v. Marsh*, 918 F.2d 1022, 1027 (1st Cir. 1990). This is not surprising, as the Supreme Court has noted that § 633a is "patterned directly after" 42 U.S.C. § 2000e-16, the provision that provides Title VII protections to federal employees, and that the bill's author intended the age provision to be "substantially similar to" the rights in place for federal workers under Title VII. *Nakshian*, 453 U.S. at 163-64 & n.15. Moreover, "the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace . . . ." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (quoted in *Burzynski*, 264 F.3d at 619, and *Lavery*, 918 F.2d at 1025).

While these factors provide an independent justification for borrowing the Title VII limitations period, it is also relevant that the EEOC—the agency responsible for enforcing the ADEA—has endorsed the 90-day period. See 29 C.F.R. § 1614.407(c). In support of its interpretation of the ADEA, the EEOC noted that by having identical limitations periods it is more likely that administrative complaints alleging violations of both statutes will be filed, processed, and resolved at one time, avoiding the anomaly "that one lawsuit resulting from one incident or event . . . would be governed by different limitations periods." 57 Fed. Reg. 12,634, 12,640 (April 10, 1992). The point is consonant with our statutory analysis, which rests largely on the similarity between the Title VII and ADEA causes of action. Accordingly, we hold that when federal employees bring a civil action after pursuing administrative remedies under the ADEA, the action must be brought within 90 days of final agency action, the time period allowed for similar suits under Title VII. The ruling of the district court is therefore

*Affirmed.*